**IN THE UNITED STATES DISTRICT COURT FOR THE WESTERN DISTRICT OF OKLAHOMA**

| | | |
|---|---|---|
| **ENRIQUE HORTA VALDOVINOS,** | ) | |
| **Petitioner,** | ) | |
| | ) | **Case No. CIV-26-924-J** |
| **v.** | ) | |
| **WARDEN, Cimarron Correctional Facility, et al.** | ) | |
| **Respondents.**[1] | ) | |

**REPORT AND RECOMMENDATION**

Petitioner Enrique Horta Valdovinos, a noncitizen proceeding pro se,[2] seeks a writ of habeas corpus under 28 U.S.C. § 2241. Doc. 1.[3] United States District Judge Bernard M. Jones, II referred the case to the undersigned

---

[1] Warden Chris Gantt is the current Warden of the Cimarron Correctional Facility. Warden Gantt is not a federal official, and the response is not filed on his behalf. *See* Doc. 7, at 1 n.1.

[2] This Report and Recommendation "uses the term 'noncitizen' as equivalent to the statutory term 'alien.'" *Nasrallah v. Barr*, 590 U.S. 573, 578 n.2 (2020) (citing 8 U.S.C. § 1101(a)(3)). This Court construes "[a] pro se litigant's pleadings . . . liberally," holding them "to a less stringent standard than formal pleadings drafted by lawyers." *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).

[3] Citations to a court document are to its electronic case filing designation and pagination. Except for capitalization, quotations are verbatim unless otherwise indicated.

Magistrate Judge for initial proceedings under 28 U.S.C. § 636(b)(1)(B), (C). Doc. 3. The Government responded, and Petitioner replied. Docs. 7, 8. So the matter is at issue.

For the reasons below, the undersigned recommends the Court grant in part Petitioner's habeas petition and order his immediate release.

## I. Factual background and procedural history.

Petitioner is a citizen of Mexico who arrived at a port of entry in Texas on September 17, 2023, without documents sufficient for lawful entry. Doc. 7, at 3-4 & Ex. 1. On that same date, the Department of Homeland Security (DHS) placed him into removal proceedings through the issuance of a Notice to Appear (NTA) which charged him as removable under Section 212(a)(7)(A)(i)(I) of the Immigration and Nationality Act (INA).[4] *Id.* at 4 & Ex. 2, at 1-2(date of service September 17, 2023).[5]

---

[4] This section is codified at 8 U.S.C. § 1182(a)(7)(A)(i)(I). That section provides that any noncitizen, who at the time of application for admission, was not in possession of (1) a valid unexpired entry document as required by the INA, and (2) a valid travel document/document of identity and nationality as required by regulations is inadmissible. 8 U.S.C. § 1182(a)(7)(A)(i).

[5] The NTA is dated September 17, 2023. Doc. 7, Ex. 2, at 1. Respondents incorrectly reference the date of the NTA as the date Petitioner was scheduled to appear which was July 28, 2025. Doc. 7, at 4 & Ex. 2, at 1-2.

Immigration and Customs Enforcement (ICE) paroled Petitioner into the United States pending removal proceedings and Respondents state “his parole was to remain in effect until September 17, 2025.” Doc. 7, at 4.

Petitioner states he has applied for asylum. Doc. 8, at 2. On October 28, 2025, when reporting for an ICE check-in, ICE detained him. Doc. 7, at 4 & Ex. 3. The Immigration Judge (IJ) set a bond hearing but determined the request to be withdrawn when counsel did not appear. *Id.* at 4 & Ex. 4.

## II. Petitioner’s claims.

Petitioner raises four grounds for relief:

(1) Violation of his procedural and substantive due process right under the Fifth Amendment through his illegal arrest and detention without notice;

(2) Violation of the INA and the Administrative Procedure Act through his illegal arrest and detention without notice;

(3) Violation of his due process rights and the INA through his detention without a bond redetermination hearing; and

(4) Violation of the INA and his due process rights through his warrantless arrest.

Doc. 1, at 7-8. Petitioner asks the Court to grant his petition and order his immediate release under his previous conditions of supervision. In the alternative, he asks the Court to order Respondents to provide him with a prompt and constitutionally adequate individualized custody determination

where the Government carries the burden to show Petitioner presents a risk of flight or danger to the community and the decision maker should consider alternatives to detention and his ability to make bond. He also seeks preliminary and permanent injunctive relief barring any future illegal arrest and/or detention of him; asks the Court to shorten the response and objection time; resolve this matter expeditiously; and enter an order to show cause why this relief should not be granted within three days.[6] *Id.* at 8.

## III. Standard of review.

An application for a writ of habeas corpus "is an attack by a person in custody upon the legality of that custody, and . . . the traditional function of the writ is to secure release from illegal custody." *Preiser v. Rodriguez*, 411 U.S. 475, 484 (1973). Habeas corpus relief is warranted only if the petitioner "is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2241(c)(3). "Challenges to immigration detention are properly brought directly through habeas." *Soberanes v. Comfort*, 388 F.3d 1305, 1310 (10th Cir. 2004) (citing *Zadvydas v. Davis*, 533 U.S. 678, 687-88 (2001)).

---

6 The Court addressed Petitioner's last three requests when it directed Respondents to respond to the Petition. *See* Doc. 5.

## IV. Discussion.

### A. Petitioner is entitled to due process.

Petitioner claims his detention without notice or a hearing is unlawful. Doc. 1, at 7-8. Respondents argue Petitioner is not entitled to a bond hearing because his parole expired on September 17, 2025, and Petitioner is an arriving alien subject to mandatory detention under 8 U.S.C. § 1225. Doc. 7, at 5-11.

Under § 1225(b)(1)(A)(i), "[i]f an immigration officer determines that [the noncitizen] . . . who is arriving in the United States . . . is inadmissible under section 1182(a)(6)(C) or 1182(a)(7) . . ., the officer shall order the [noncitizen] removed from the United States without further hearing or review unless the [noncitizen] indicates either an intention to apply for asylum . . . or a fear of persecution." 8 U.S.C. § 1225(b)(1)(A)(i). An individual detained as inadmissible upon inspection at the border can only be paroled into the United States "'for urgent humanitarian reasons or significant public benefit.'" *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018) (quoting 8 U.S.C. § 1182(d)(5)(A)); *see also* 8 U.S.C. § 1182(d)(5)(A) (granting discretion to DHS officials to "parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any alien applying for admission to the United States").

The record shows that, upon inspection at the time of his request for admission through a port of entry, ICE first detained Petitioner and then "paroled" him into the United States and placed him into removal proceedings. Doc. 7, Ex. 2. Respondents cannot locate the actual documents reflecting Petitioner's parole in 2023. *Id.* at 4 n.4. But they submit Petitioner was temporarily paroled into the United States under 8 U.S.C. § 1182(d)(5)(A). *See id*. at 4-5, 9-10. Respondents re-detained Petitioner in October 2025. Doc. 8, at 2.

Petitioner asserts that ICE violated its own regulations and his due process rights when agents arbitrarily arrested and detained him at a scheduled check-in. Doc. 1, at 7-8. Respondents argue they did not violate any of Petitioner's due process rights by detaining him because, upon termination of his parole, he was subject to mandatory detention under § 1225(b)(1) as an applicant for admission. Doc. 7, at 9-10. The Court should agree with Petitioner.

The Government released Petitioner on humanitarian parole. "[I]t is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." *See Rafibaev v. Noem*, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) (internal quotation marks omitted); *cf.*

*Qasemi v. Francis,* 2025 WL 3654098, at *7 (S.D.N.Y. Dec. 17, 2025) ("[A] noncitizen paroled into the country—i.e., a noncitizen residing in the United States—is not an arriving alien."). Still, even if the Court assumed Petitioner was subject to mandatory detention upon termination of his parole, "Respondents must still comply with the requirements of due process." *E-D-S-O- v. Hernandez*, 2026 WL 1067036, at *3 (W.D. Wash. Apr. 20, 2026).

"The Fifth Amendment's Due Process Clause forbids the Government to deprive any person of liberty without due process of law. Freedom from imprisonment—from government custody, detention, or other forms of physical restraint—lies at the heart of the liberty that Clause protects." *Zadvydas,* 533 U.S. at 690 (internal quotation marks and alterations omitted); *cf. Trump v. J.G.G.*, 604 U.S. 670, 673 (2025) ("'It is well established that the Fifth Amendment entitles aliens to due process of law' in the context of removal proceedings." (internal quotation marks omitted)). Individuals who have been conditionally released from detention have a protected interest in their "continued liberty." *Young v. Harper*, 520 U.S. 143, 147 (1997). "This is true even when the released individual is subject to extensive conditions of release." *Villanueva v. Tate*, 801 F. Supp. 3d 689, 704 (S.D. Tex. 2025).

When the government promulgates regulations "with the force and effect of law," agencies are bound to follow their own "existing valid regulations."

*United States ex rel. Accardi v. Shaughnessy,* 347 U.S. 260, 265, 268 (1954). Pertinent here, "[t]he statutes and regulations governing immigration and removal proceedings afford important procedural safeguards to detainees." *Villanueva*, 801 F. Supp. 3d at 698-99.

**1. Statutory and regulatory framework.**

Respondents admit they paroled Petitioner into the country under § 1182(d)(5). Doc. 7, at 5.

Section 1182(d)(5)(A) grants discretion to DHS officials to "parole into the United States temporarily under such conditions as [they] may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit any [noncitizen] applying for admission to the United States." 8 U.S.C. § 1182(d)(5)(A). Any revocation of this parole must be based on a decision by a DHS official that either "the purpose for which parole was authorized" has been accomplished or that "neither humanitarian reasons nor public benefit warrants the continued presence of the [noncitizen] in the United States." 8 C.F.R. § 212.5(e)(2)(i); *see also* 8 U.S.C. § 1182(d)(5)(A) (stating the DHS Secretary may revoke parole "when the purposes of such parole . . . have been served"). And the parole will only be terminated when "written notice" of this decision is served on the noncitizen. 8 C.F.R. § 212.5(e)(2)(i).

Respondents state that Petitioner's parole automatically expired on September 17, 2025. Doc. 7, at 4, 10. Because Petitioner's parole expired, Respondents argue the regulations did not require notice to Petitioner and his detention is proper under § 1225(b)(1). *See id.* at 10; *see also* 8 C.F.R. § 212.5(e)(1) (stating parole is automatically terminated without written notice "at the expiration of the time for which parole was authorized"). But Respondents provide no evidence that Petitioner's parole expired. *See* Doc. 7, at 4 n.4. And, assuming it did expire, the record shows Petitioner remained on parole after the date of expiration. *See* Doc. 7, Ex. 3 (noting date of encounter as Oct. 28, 2025).

"[T]he applicable regulatory scheme requires that, where parole has automatically terminated upon expiration and the noncitizen is not returned to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Caisa Telenchana v. Hermosillo*, 2026 WL 696806, at *7 (W.D. Wash. Mar. 12, 2026); *cf. M.L. v. Warden of the Mesa Verde ICE Processing Ctr.*, 2026 WL 1256421, at *4 (E.D. Cal. May 7, 2026) ("The parole scheme . . . requires parole to continue after expiration unless there is an executable final order of removal or an individualized determination justifying

a parolee's detention."). Petitioner remained on parole after the date of expiration. So the continuation of his parole was implied, and Respondents cannot rely on the automatic termination clause to justify Petitioner's re-detention.

The Court should also reject Respondents' argument that Petitioner reverted to the status of an "arriving alien" when he was re-detained. Doc. 7, at 9-10. Section 1182(d)(5)(A) "does not state that a noncitizen is returned to the 'status' they held upon their parole, that they revert to status as an 'arriving alien,' or that they must be detained." *Qasemi*, 2025 WL 3654098, at *10. Rather, the statute states that, following the expiration of parole, the noncitizen shall (1) "forthwith return or be returned to the custody from which he was paroled" and (2) "thereafter his case shall continue to be dealt with in the same manner as that of any other applicant for admission to the United States." 8 U.S.C. § 1182(d)(5)(A).

Section 1182(d)(5)(A) "recognizes that the parole physically happened, because it contemplates that the noncitizen must be returned to detention." *Coal. for Humane Immigrant Rts. v. Noem*, 805 F. Supp. 3d 48, 86 (D.D.C. 2025). Because § 1182(d)(5)(A) recognizes that noncitizens paroled under its authority are released into the United States, it is not logical then to assume they revert to mandatory detention under § 1225(b)(1) as an arriving alien.

Especially given that § 1182(d)(5)(A) itself does not state that a noncitizen reverts to the status he or she possessed before the grant of parole. *Id.*

In fact, § "1182(d)(5)(A) suggests that rather than reverting to any prior status, a noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal." *Rodriguez-Acurio v. Almodovar*, 811 F. Supp. 3d 274, 302 (E.D.N.Y. 2025); *see also Orozali Uulu v. Grant*, No. CIV-26-611-SLP, 2026 WL 1265109, at *3-4 (W.D. Okla. May 8, 2026) (finding that a "noncitizen whose parole has expired is treated like the vast majority of undocumented immigrants currently living in this country who are not subjected to expedited removal"). The Court should find that § 1182(d)(5)(A) does not require Petitioner to be mandatorily detained as Respondents assert. *See, e.g.*, *Rodriguez-Acurio*, 811 F. Supp. 3d at 302 ("The Supreme Court has confirmed that 'nothing in this text [of Section 1182(d)(5)(A)] . . . affirmatively authorizes detention,' so the statute is not an independent authority to detain parolees following the expiration of parole." (quoting *Clark v. Martinez*, 543 U.S. 371, 385 (2005))).

Finally, the Court should reject Respondents' argument that the NTA provided Petitioner with sufficient notice of the termination of his parole. Doc. 7, at 10. The Government served the NTA on Petitioner on September 17, 2023,

when he arrived at the border and the Government placed him into removal proceedings. *Id*. Ex. 2, at 1 (dated September 17, 2023, with a future appearance date of July 28, 2025). It did not serve him a new NTA on July 28, 2025, as Respondents argue in the response. So no notice was provided to Petitioner as contemplated by 8 C.F.R. § 212.5(e)(2)(i).

**2. Respondents did not comply with the applicable regulations before revoking Petitioner's parole.**

Respondents do not submit that an appropriate official made the discretionary decision to revoke Petitioner's parole. Respondents issued the NTA to Petitioner when he was first paroled. Doc. 7, Ex. 2. So it provided no notice to Petitioner about the termination of his parole when he was detained in October 2025.

The lack of an individualized determination violated the regulations governing the termination of parole. *See, e.g.*, *E-D-S-O-*, 2026 WL 1067036, at *4 ("Nothing in the record shows Respondents provided Petitioner with written notice of revocation of his humanitarian parole, that the original purpose of his parole was accomplished, or that a DHS official with authority determined 'neither humanitarian reasons nor public benefit' warranted continued parole."); *Munoz Materano v. Arteta*, 804 F. Supp. 3d 395, 418 (S.D.N.Y. 2025) ("Respondents provide no indication that an individualized determination was

made as to the revocation of Munoz Materano's parole; nor do they articulate, even now, either that the purpose for which Munoz Materano's parole was authorized has been accomplished, nor that neither humanitarian reasons nor public benefit warrants his continued presence in the United States."); *see also* *Y-Z-L-H v. Bostock*, 792 F. Supp. 3d 1123, 1137-38 (D. Or. 2025) ("This is a grant of discretionary authority, but it has a mandatory requirement—parole may be terminated or revoked only when in the Secretary's opinion the parole's purposes have been met.").[7]

**3. Respondents violated Petitioner's due process rights by summarily revoking his parole.**

This Court analyzes Petitioner's procedural due process claim to determine whether he has a protected liberty interest, and what process is necessary to ensure any deprivation of that liberty interest aligns with the Due Process Clause of the Fifth Amendment. *See Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In examining the necessary process, the Court turns to the three factors set forth in *Mathews v. Eldridge*: (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous

---

[7] The parties disagree about the warrant provision of § 1226(a). *See* Doc. 8, at 7-8; Doc. 7, at 10-11. But Petitioner was paroled under § 1182(d)(5), so the Court looks to the regulations governing the termination of parole under that section. *See, e.g.*, 8 C.F.R. § 212.5(e).

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." 424 U.S. 319, 335 (1976).

"When the [G]overnment grants [a noncitizen] parole into the country, it creates a liberty interest intimately tied to freedom from imprisonment." *Sanchez v. LaRose*, 2025 WL 2770629, at *3 (S.D. Cal. Sept. 26, 2025); *see also Iza v. Arnott*, 2026 WL 67152, at *3 (W.D. Mo. Jan. 8, 2026) ("Individuals released on parole or other forms of conditional release have a liberty interest in their 'continued liberty.'" (quoting *Morrissey v. Brewer*, 408 U.S. 471, 482 (1972))); *Sahil v. De Anda-Ybarra*, 2026 WL 560216, at *3 (D.N.M. Feb. 27, 2026) (finding "that noncitizens acquire a liberty interest once released from immigration detention"). Petitioner's interest in physical freedom "is the most elemental of liberty interests." *Hamdi v. Rumsfeld*, 542 U.S. 507, 529 (2004); *see also Zadvydas*, 533 U.S. at 690 (stating that an individual's interest in being free from detention "lies at the heart of the liberty that [the Due Process] Clause protects"). Respondents deprived Petitioner of his protected status when they re-detained him.

Turning to the *Mathews* factors, the Court finds that Petitioner has a significant private interest in remaining free from detention after spending over two years on parole. By initially releasing Petitioner on parole, the Government necessarily determined that he was "neither a security risk nor a risk of absconding." 8 C.F.R. § 212.5(b). Respondents have presented no evidence that there was a change in this assessment. By permitting Petitioner to remain at liberty for over two years, the Government enabled Petitioner to develop a protected liberty interest in remaining out of custody. To be sure, "Congress may make rules as to aliens that would be unacceptable if applied to citizens." *Demore v. Kim*, 538 U.S. 510, 522 (2003). But that power remains "subject to important constitutional limitations." *Zadvydas*, 533 U.S. at 695. And it does not erase Petitioner's significant interest in remaining free from detention.

Respondents do not suggest Petitioner violated any laws while in the United States. During his release, Petitioner's interest in continued liberty grew even stronger as he presumably "form[ed] the other enduring attachments of normal life." *Morrissey*, 408 U.S. at 482. And "Petitioner's liberty interest does not evaporate when a term of parole expires." *Juan Carlos V.B. v. Chestnut*, 2026 WL 1224238, at *2 (E.D. Cal. May 5, 2026); *see also Begaliev v. Warden of Otero Cnty. Processing Ctr.*, 2026 WL 837109, at *5

(D.N.M. Mar. 26, 2026) (finding a similarly situated petitioner "had a sufficient liberty interest created by the regulations"). The first *Mathews* factor favors Petitioner.

Second, the Court considers "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards." *Mathews*, 424 U.S. at 335. The risk of an erroneous deprivation of Petitioner's liberty interest is considerable where ICE arrested him at a scheduled check-in without any notice of the reason or a pre-deprivation hearing.

"Constitutionally inadequate notice also often leads to constitutionally inadequate opportunity to be heard, because opportunity to be heard must be meaningful to be constitutionally sufficient." *Saqib v. Andrews*, 2026 WL 350830, at *6 (E.D. Cal. Feb. 9, 2026), *adopted*, 2026 WL 440566 (E.D. Cal. Feb. 17, 2026). Respondents detained Petitioner with no procedural safeguards to determine whether the revocation of his parole was justified. This factor weighs in Petitioner's favor. *See, e.g.*, *E.A. T.-B. v. Wamsley*, 795 F. Supp. 3d 1316, 1322 (W.D. Wash. 2025) ("That the Government may believe it has a valid reason to detain Petitioner does not eliminate its obligation to effectuate the detention in a manner that comports with due process.").

Finally, the Court considers the Government's interest, including any fiscal or administrative burdens. *Mathews*, 424 U.S. at 335. "While this Court recognizes that the [G]overnment has an interest in enforcing immigration laws," the Government's interest in arresting Petitioner without a determination whether he posed a risk of flight or danger is low. *Saqib*, 2026 WL 350830, at *6; *see, e.g.*, *Diaz v. Kaiser*, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T[he Court concludes that the [G]overnment's interest in re-detaining Petitioner . . . is 'low,' particularly in light of the fact that Petitioner[] has long complied with his reporting requirements."). And the Court can discern no significant administrative or fiscal burden associated with placing the burden on the Government to follow its own laws and regulations. *See, e.g.*, *Iza,* 2026 WL 67152, at *3 ("An alien's opportunity to be heard regarding the revocation of his parole is only meaningful if the [G]overnment comports with its own internal standards regarding parole revocation."). Especially given that Petitioner's detention was not considered necessary for over two years.[8]

---

[8] The undersigned agrees with Respondents that Petitioner cannot succeed on his APA claim because this Court cannot grant relief under the APA in a habeas action. *See* Doc. 7, at 6-8. The APA provides a cause of action only where there is no other adequate remedy in court. *See* 5 U.S.C. § 704. Challenges to the fact or duration of immigration detention are cognizable in habeas and "must be brought in habeas." *J.G.G.*, 604 U.S. at 672. Petitioner can attain the relief he seeks through habeas corpus. So the APA does not supply an independent cause of action.

**B. Remedy.**

Habeas is "a remedy for unlawful executive detention." *Munaf v. Geren*, 553 U.S. 674, 693 (2008). "The typical remedy for such detention is, of course, release." *Id.*; *see also Thuraissigiam*, 591 U.S. at 107 ("Habeas has traditionally been a means to secure release from unlawful detention."). Federal district courts have broad equitable powers to craft habeas relief. *Burton v. Johnson*, 975 F.2d 690, 693 (10th Cir. 1992). District courts have the power and authority to dispose of habeas corpus matters "as law and justice require." 28 U.S.C. § 2243*; see also United States v. Allen*, 139 F.3d 913 (10th Cir. 1998) ("If the imprisonment cannot be shown to conform with the fundamental requirements of law, the individual is entitled to his immediate release." (quoting *Johnson v. Rogers*, 917 F.2d 1283, 1284 (10th Cir. 1990))).

The undersigned finds that ICE breached its own regulations and violated Petitioner's due process rights when it summarily revoked his parole. Based on these findings, the undersigned recommends the Court grant the habeas corpus petition in part and order Respondents to immediately release Petitioner from detention subject to the same conditions of his earlier parole. This view is shared by numerous courts across the country.[9]

---

[9] *See Singh v. Noem*, 2026 WL 766228, at *10 (D.N.M. Mar. 18, 2026) ("Petitioner's . . . release is required to remedy the ongoing due process

## V. Recommendation and notice of right to object.

For the reasons set forth above, the undersigned recommends the Court **grant** Petitioner's habeas petition in part and **order his immediate release subject to the same conditions that governed his earlier parole. The undersigned also recommends that the Court order Respondents certify their compliance with the Court's order by filing a status report within five business days of the Court's order, and to promptly provide a copy of this order to counsel for the Warden of the Cimarron Correctional Facility.** Finally, the Court should order that Respondents cannot re-detain Petitioner without notice and a pre-deprivation hearing before a neutral decision-maker where the Government bears the burden of proving, by clear and convincing evidence that Petitioner is a flight risk and a danger to the community.

---

violation caused by Petitioner being detained while his conditional parole has not yet been terminated."); *Velasquez Montillo v. Brooksby*, 2026 WL 592355, at *10 (D. Utah Mar. 3, 2026) (concluding immediate release was the appropriate remedy where "there has been no notice of a change in circumstances requiring modification of the November 2021 [order of release on recognizance]"); *Vielma Uzcategui v. Brooksby*, 2026 WL 622751, at *13 (D. Utah Mar. 5, 2026) (same as to petitioner ordered released on her own recognizance in September 2023); *Murzi v. Noem*, 2026 WL 395111, at *2 (D. Colo. Feb. 12, 2026) (ordering petitioner's immediate release where petitioner had previously been released on parole).

The undersigned advises the parties of their right to file an objection to this Report and Recommendation with the Clerk of this Court by July 24, 2026, in accordance with 28 U.S.C. § 636 and Federal Rule of Civil Procedure 72.[10] The undersigned further advises the parties that failure to make timely objections to this Report and Recommendation waives the right to appellate review of both factual and legal questions contained herein. *Moore v. United States*, 950 F.2d 656, 659 (10th Cir. 1991). This Report and Recommendation disposes of the issues referred to the undersigned Magistrate Judge in the captioned matter.

**ENTERED** this 21st day of July, 2026.

SUZANNE MITCHELL
UNITED STATES MAGISTRATE JUDGE

[10] Given the expedited nature of these proceedings, the undersigned has reduced the typical objection time to this Report and Recommendation to three days. *See* Fed. R. Civ. P. 72(b)(2) advisory committee's note to 1983 addition (noting that rule establishing 14-day response time "does not extend to habeas corpus petitions, which are covered by the specific rules relating to proceedings under Sections 2254 and 2255 of Title 28."); *see also Whitmore v. Parker,* 484 F. App'x 227, 231, 231 n.2 (10th Cir. 2012) ("The Rules Governing § 2254 Cases may be applied discretionarily to habeas petitions under § 2241" and that "while the Federal Rules of Civil Procedure may be applied in habeas proceedings, they need not be in every instance – particularly where strict application would undermine the habeas review process").