**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF OKLAHOMA**

ENRIQUE HORTA VALDOVINOS,          )
                                   )
          Petitioner,              )
                                   )
v.                                 )          Case No. CIV-26-924-J
                                   )
WARDEN, CIMARRON                   )
CORRECTIONAL FACILITY, et al.,     )
                                   )
          Respondents.             )

## ORDER

Petitioner Enrique Horta Valdovinos, a Mexican citizen, is currently in the custody of the

United States Immigration and Customs Enforcement (ICE).  He has filed a Petition for Writ of

Habeas Corpus seeking immediate release [Doc. No. 1].  The matter was referred to United States

Magistrate Judge Suzanne Mitchell consistent with 28 U.S.C. § 636(b)(1)(B), (C).  Judge Mitchell

issued a Report and Recommendation recommending that the Court (1) grant the Petition in part

and (2) order Respondents to immediately release Petitioner to the same conditions that governed

his parole.  (Rep. & Rec.) [Doc. No. 9].  Respondents filed a timely objection (Obj.) [Doc. No.

11], triggering de novo review.  *See Quint v. Vail Resorts, Inc.*, 89 F.4th 803, 808 (10th Cir. 2023).

Petitioner did not object.

For the reasons discussed below, the Report and Recommendation is ADOPTED IN PART

and DECLINED IN PART.

Petitioner entered the United States in September 2023 and was immediately served with

a Notice to Appear charging him as removable.  He was released on humanitarian parole at the

same time.  On September 17, 2025, Petitioner's parole expired.[1]  The next month, Petitioner was arrested pursuant to a warrant[2] and he remains in ICE custody without a bond hearing.

## I.    The Report and Recommendation

On review, Judge Mitchell concluded that (1) Respondents violated the Immigration and Nationality Act and Petitioner's due process rights when they arrested and detained him without notice; (2) Petitioner remained on parole after its expiration, requiring Respondents to provide him written notice of the parole termination; (3) assuming his parole was terminated, Petitioner did not return to mandatory detention status under 8 U.S.C. § 1225(b)(1); and, (4) Respondents violated the applicable regulations and Petitioner's due process rights when revoking Petitioner's parole. *See* Rep. & Rec. at 1-17.  As a remedy, Judge Mitchell recommended Petitioner's immediate release.  *See id.* at 18.

## II.    Analysis

Respondents object to Judge Mitchell's findings.  *See* Obj. at 1-9.  On de novo review, the Court ADOPTS Judge Mitchell's conclusion that Petitioner's parole termination did not cause him to revert to mandatory detention status but otherwise DECLINES the Report and Recommendation.

Judge Mitchell opined that Respondents violated Petitioner's statutory and constitutional rights when ICE officials arrested him and revoked his parole without prior written notice.  *See*

---

[1] Respondents were unable to locate Petitioner's parole documentation noting the expiration date. [Doc. No. 7, n. 4].  However, Respondents state that the September 17, 2025 expiration date is reflected "in multiple . . . databases," and because the Response was properly signed, counsel for Respondents have certified that "the factual contentions have evidentiary support."  Fed. R. Civ. P. 11(b)(3).  Moreover, Petitioner had two opportunities to dispute this date:  his Reply [Doc. No. 8] and through an objection, which he did not file.

[2] *See* Obj., Ex. 1.

Rep. & Rec. at 9-10.  But her conclusion rests on a theory that because Petitioner remained un-detained after his parole expired, he "remained on parole . . . ." *Id.*  The Court disagrees.

"[P]arole shall be automatically terminated without written notice (i) upon the departure from the United States of the alien, or, (ii) if not departed, *at the expiration of the time for which parole was authorized . . . .*" 8 C.F.R. § 212.5(e)(1) (emphasis added).  Despite the clear language, Judge Mitchell relies on *Caisa Telenchana v. Hermosillo*, No. 2:26-CV-00363-GJL, 2026 WL 696806 (W.D. Wash. Mar. 12, 2026)[3] where the district court held that if the noncitizen is not returned "to custody for either the timely execution of a removal order or upon an individualized decision by an authorized DHS official, continuation of humanitarian parole may be implied and, thereafter, the procedures for on-notice termination apply." *Telenchana*, 2026 WL 696806, at *7.[4] But neither the Tenth Circuit nor the Supreme Court has made that determination and the regulation is clear:  parole "shall" terminate "at the expiration of the time for which parole was authorized."  "[W]hen interpreting [a] . . . regulation, we begin by examining the plain language

---

[3] The Report and Recommendation also cites *M.L. v. Warden of the Mesa Verde ICE Processing Ctr.*, 2026 WL 1256421 (E.D. Cal. May 7, 2026) for the same proposition.  *See* Rep. & Rec. at 9.  The court there simply cited *Telenchana* without conducting its own analysis.  *See M.L.,* 2026 WL 1256421, at *4.

[4] The regulation further states that "[i]f the exclusion, deportation, or removal order cannot be executed within a reasonable time, the alien shall again be released on parole unless in the opinion of the official listed in paragraph (a) of this section the public interest requires that the alien be continued in custody."  § 212.5(e)(2)(i).  The court in *Telenchana* relied on this language to conclude that if the noncitizen is not returned to *custody* – seemingly immediately – his continuance on parole is implied.  *See supra* at 3.  But the regulation states that if the *removal* does not occur within a reasonable time, the noncitizen should be returned to parole status.  The Court finds no persuasive authority holding that failure to *detain* a noncitizen immediately upon the expiration of his or her parole causes that parole to extend by implication.  Indeed, such a theory ignores the "shall" terminate "upon expiration of the authorized term" regulatory language and, followed to its logical end, would require written notice to any noncitizen who remained un-detained even one day past his or her parole expiration date.  For these reasons, the Court declines to adopt the rationale in *Telenchana*.

of the text, giving each word its ordinary and customary meaning. If, after engaging in this textual analysis, the meaning of the regulation is clear, our analysis is at an end, and we must enforce the regulation in accordance with its plain meaning." *Scalia v. Wynnewood Ref. Co., LLC*, 978 F.3d 1175, 1181 (10th Cir. 2020) (cleaned up).

In sum, the Court rejects the conclusion that Petitioner remained on humanitarian parole even after it automatically terminated. Relatedly then, the Court finds that Petitioner was not entitled to written notice of the termination of his parole, nor was he entitled to any individualized determination. *See* § 212.5(e)(1). Any contrary finding in the Report and Recommendation is therefore DECLINED.

However, again engaging de novo review, the Court does agree with Judge Mitchell that Petitioner's termination of humanitarian parole did not automatically return him to mandatory detention under 8 U.S.C. § 1225(b)(1). *See Kumar v. Johnson*, No. CIV-26-352-J, 2026 WL 937560 (W.D. Okla. Apr. 7, 2026); *Zhakhonov v. Grant*, No. CIV-26-350-J, 2026 WL 1865418, at *2 (W.D. Okla. June 29, 2026) (collecting cases); *Ochilov v. Grant*, No. CIV-26-526-R, 2026 WL 1896139, at *2 (W.D. Okla. July 1, 2026); *Francisco Arevalo Castillo v. Figueroa*, No. CIV-26-0162-HE, 2026 WL 1960937, at *1 (W.D. Okla. July 7, 2026). Her conclusion that Petitioner is not subject to mandatory detention is ADOPTED.

Having declined Judge Mitchell's findings that Respondents violated Petitioner's statutory, regulatory, or constitutional rights through his arrest or parole termination, the Court likewise DECLINES her recommendation that he be released immediately. Petitioner was paroled into the United States, permitted to reside in the interior, and complied with the conditions of his release before being re-detained. "Under those circumstances, Petitioner's detention is more naturally characterized as detention 'pending a decision on whether the alien is to be removed from the

4

United States' within the meaning of 8 U.S.C. § 1226(a)." *Rebolledo v. Figueroa, et al.*, No. CIV-26-958-J, 2026 WL 2138027, at *2 (W.D. Okla. July 24, 2026) (citing *Rafibaev v. Noem*, No. 26-CV-00461-PAB, 2026 WL 607559, at *2 (D. Colo. Mar. 4, 2026) ("[W]here petitioner has been released on parole pursuant to § 1182(d)(5)(A) for nearly two years, it is illogical to suggest that his re-detention is governed by § 1225(b)(1), which . . . governs procedures for the inspection of aliens arriving in the United States who have not been admitted or paroled." (cleaned up))). Because Petitioner's detention is governed by § 1226(a), the Court concludes the proper remedy in this case is not immediate release, but an individualized bond hearing before an Immigration Judge exercising jurisdiction under § 1226(a). *Rebolledo*, 2026 WL 2138027, at *2; *Zhakhonov*, 2026 WL 1865418, at *3.

III.    <u>Conclusion</u>

For the reasons discussed above, the Report and Recommendation [Doc. No. 9] is ADOPTED IN PART and the Court GRANTS IN PART Petitioner's Petition for Writ of Habeas Corpus to the extent it alleges that Petitioner did not automatically return to mandatory detention status under § 1225(b)(1) upon his parole termination and is entitled to a bond hearing.  In all other respects, the Report and Recommendation is DECLINED and the Petition is DENIED.

Respondents shall provide Petitioner with a bond hearing pursuant to § 1226(a) within seven business days or otherwise release Petitioner if he has not received the hearing within that period.  Respondents shall certify compliance within ten business days of the date of this Order.

A separate judgment will enter.

IT IS SO ORDERED this 30th day of July, 2026.

BERNARD M. JONES, II
UNITED STATES DISTRICT JUDGE